UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DANIELLE S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1013-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Danielle S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **GRANTED**.

## <u>BACKGROUND</u>

On May 5, 2017, Plaintiff protectively filed her applications for DIB and SSI, alleging disability beginning March 26, 2013 (the disability onset date), due to arthritis, myotonia, chronic back pain, spondylolysis, degenerative joint disease, depression, anxiety, migraines, chronic neck

pain, and GERD. Transcript ("Tr.") 231-250, 263. Plaintiff's claims were denied initially on August 11, 2017, after which she requested an administrative hearing. Tr. 15. On June 4, 2019, Administrative Law Judge Brian LeCours (the "ALJ") held a hearing in Buffalo, New York.  Tr. 15. Plaintiff appeared and testified at the hearing and was represented by Zachary Zabawa, an attorney. *Id*. Margaret E. Heck, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on June 14, 2019, finding that Plaintiff was not disabled. Tr. 15-28. On June 4, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's June 14, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.     The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his June 14, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018;

2. The claimant has not engaged in substantial gainful activity since March 26, 2013, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: lumbar disc disease, cervical disc disease, and sodium channel myotonia (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR   404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),[1] except the claimant can frequently balance, stoop, kneel, and crouch. The claimant can occasionally crawl and climb ramps and stairs. The claimant can never climb ladders and scaffolds. The claimant can occasionally reach overhead (bilateral limitation) and can frequently handle (bilateral limitation). The claimant should avoid loud noise, defined as Noise Intensity Level 4 or above. The claimant should avoid hazardous conditions such as unprotected heights and dangerous machinery.  The claimant can occasionally drive;

6. The claimant is capable of performing past relevant work as a bank processor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965);

---

[1]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2013, through the date of this decision (20 CFR 404.1520(1) and 116.920(1)).

Tr. 15-28.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on May 5, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 28. The ALJ also determined that based on the application for supplemental security benefits protectively filed on May 5, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff essentially asserts a single point of error challenging the ALJ's evaluation of treating source and other opinion evidence. *See* ECF No. 7-1 at 12-23. Specifically, Plaintiff takes issue with the ALJ's assessment of the May 2019 medical source statement of primary care physician Nancy A. Ciavarri, M.D. ("Dr. Ciavarri"). *See id*. at 14-21. Plaintiff also argues that the ALJ's mental RFC finding is unsupported because it did not mirror the opinions of consultative examiners Adam Brownfeld Ph.D. ("Dr. Brownfeld") and Yu-Ying Lin, Ph.D. ("Dr. Lin") and was only supported by the state agency medical consultant's opinion. *See id*. at 17-18. Accordingly, Plaintiff argues, the ALJ substituted his own lay judgment for that of a medical source and formulated an RFC that was not supported by substantial evidence. *See id*. at 19-20.

The Commissioner argues in response that the ALJ properly evaluated the medical opinions in accordance with the applicable regulations. *See* ECF No. 11-1 at 21-30. With respect to  Dr. Ciavarri's treating source opinion, the Commissioner argues that the applicable regulation makes clear that, for claims filed on or after March 27, 2017, such as Plaintiff's claim, no opinions, including those from a treating source, are entitled to any deference or specific evidentiary weight. *See id*.  Further, argues the Commissioner, the ALJ's consideration of the other opinions of record,

including the opinions of Drs. Brownfield and Lin, as well as the ALJ's RFC finding generally, were supported by substantial evidence. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that the ALJ carefully considered the evidence of record, including the medical opinion evidence, the treatment notes, the objective findings, and Plaintiff's subjective complaints, and his RFC determination was supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner).

Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."). The ALJ is ultimately tasked with reaching

an RFC assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

Effective for claims filed on or after March 27, 2017, the Social Security agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Several of these changes are relevant to Plaintiff's argument.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Based on the applicable regulations discussed above, Dr. Ciavarri's treating source opinion is not entitled to any deference or specific evidentiary weight. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ need only articulate how he considered a medical opinion from a medical source by indicating how persuasive he considered a medical opinion to be. *Id*. at §§ 404.1520c(b), 416.920c(b) ("The factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinion . . . . Therefore, we will explain how we considered the supportablity and consistency factors . . . .") (internal citations omitted). Thus, an ALJ may, but is not required to, explain how he considered factors other than consistency and supportability, as appropriate. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ considered the supportability and consistency of Dr. Ciavarri's opinion that Plaintiff could perform less than sedentary work with extreme function limitations; would require unscheduled breaks every 20 minutes; would be absent more than four days per month; and was unable to sustain full-time employment. Tr. 789-91. The ALJ explained that Dr. Ciavarri's opinion was inconsistent with the clinical findings of record, including her own treatment notes. Tr. 25. For example, treatment notes showed that Plaintiff was neurologically intact and had a normal gait, normal heel and toe walk, normal range of motion of the lumbar spine, and full strength in the upper and lower extremities. Tr. 433, 435, 437, 464, 500, 502, 516, 536, 539, 573, 581, 583, 640, 703, 715. The ALJ also compared Dr. Ciavarri's clinical notes with the limitations described above, noting that in November 2018, Dr. Ciavarri reported that Plaintiff was doing a lot of housework and chasing her one-year-old granddaughter around (Tr. 769-70), and in January 2019,

she indicated that Plaintiff had shoveled snow a couple of times; she had never filled her prescription for Lyrica; and she declined to undergo physical therapy(Tr. 765). Tr. 28.

In support of her contention that the ALJ's physical RFC finding was unsupported, Plaintiff cites to occasional findings in the record of positive straight leg raise tests and some findings suggesting she needed cervical and lumbar surgical intervention. *See* ECF No. 10-1 at 14 (citing Tr. 450, 459, 501, 640, 686). However, the ALJ discussed reports indicating that Plaintiff was not a surgical candidate. Tr. 25, 666, 674. Significantly, Dr. Ciavarri noted that Plaintiff's MRI scan was negative for surgical indications. Tr. 25, 674. The ALJ also noted that MRI scans performed in February 2018 identified mild bulging discs in the cervical spine with mild spinal cord narrowing, and imaging of the lumbar spine identified a small osteophyte formation, but no spinal stenosis. Tr. 25, 738. In any event, Plaintiff did not follow up with a surgeon, and the record does not show that Plaintiff had any neck or back surgeries. Tr. 673. Furthermore, where, as here, there is evidence in favor of the ALJ's decision, the fact that the record contains some positive findings or opinions does not undermine the ALJ's decision that Plaintiff could do a range of light work. *See Brault v. Soc. Sec. Admin.*, *Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original).

Dr. Ciavarri's opinion was also inconsistent with the opinion of state agency medical consultant G. Feldman ("Dr. Feldman") that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to ten pounds; stand and/or walk six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and had unlimited pushing and/or pulling ability other than shown for lifting and/or carrying. Tr. 118. Dr. Feldman also opined that Plaintiff could occasionally climb and crawl and frequently balance, stoop, kneel, crouch, and while limited

in bilateral overhead reaching, she had unlimited handling, fingering, and feeling abilities. Tr. 119. Dr. Feldman further opined that Plaintiff should avoid concentrated exposure to noise, vibration, and hazards. Tr. 119-20.

Plaintiff argues that, in finding Dr. Feldman's opinion persuasive, the ALJ did not specifically cite to findings that supported the doctor's opinion, but rather cited to exhibits. *See* ECF No. 10-1 at 17. Plaintiff's argument is unpersuasive. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("the absence of an express rationale does not prevent us from upholding the ALJ's determination . . . [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence"). Here, the ALJ cited to the clinical findings throughout the decision showing that Plaintiff was neurologically intact and had a normal gait, normal heel and toe walk, normal range of motion of the lumbar spine, and full strength in the upper and lower extremities, and cited the specific exhibits in support of his finding. Tr. 25-26 (citing 433, 435, 437, 464, 500, 502, 516, 536, 539, 573, 581, 583, 640, 703, 715). Because the clinical findings were consistent with, and supported by, Dr. Feldman's opinion, the ALJ properly found Dr. Feldman's opinion persuasive. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (The opinion of a reviewing source, such as a state agency physician, can constitute substantial evidence in support of an ALJ's determination).

Plaintiff's argument that Dr. Feldman's opinion was stale is similarly meritless. *See* ECF No. 10-1 at 17. Dr. Feldman's opinion is not "stale" as the evidence of record after the doctor's opinion does not demonstrate that Plaintiff's condition significantly deteriorated. Tr. 92-94, 633, 1511-12. *See Kidd v. Comm'r of Soc. Sec.*, No. 18-CV-1217, 2019 WL 1260750, at *3, 4 (W.D.N.Y. 2019) (A consultative examiner's opinion was not automatically stale merely because it was rendered almost two years prior to the administrative hearing). After Dr. Feldman's August

2017 opinion, Plaintiff told Dr. Ciavarri that she was functional on her pain regimen and the doctor prescribed a walking program for Plaintiff. Tr. 767-68. The doctor also reported that Plaintiff had negative straight leg raise testing bilaterally. Tr. 765.

Dr. Ciavarri's opinion was also inconsistent with Plaintiff's full range of activities of daily living. The ALJ properly considered Plaintiff's activities of daily living, including her ability to care for her quadriplegic daughter, in determining her ability to work. *See Poupore v. Astrue*, 566 F.3d at 307 (evidence that Poupore cared for an infant, watched television, read, used the computer, and occasionally drove, vacuumed, and washed dishes, supported the ALJ's finding that Poupore could perform light work); *see also Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2020) (ALJ factored in claimant's ability to perform childcare in determining his ability to work). Although Plaintiff claims that her son performed most of her daughter's care (*see* ECF No. 10-1 at 16; Tr. 39), this is inconsistent with Plaintiff's reports throughout the record that she was caring for her paralyzed daughter with no mention of her son's assistance. Tr. 588, 656, 659.

Plaintiff told Dr. Ciavarri that she was the "full time care[ ]taker for her daughter." Tr. 663, 666. She also stated in her function report that she was the "sole provider for daughter." Tr. 278. Moreover, although she may have only infrequently chased her granddaughter around or shoveled snow (Tr. 765, 769-70), Plaintiff continuously cared for her personal needs, prepared meals, managed her finances, used public transportation, drove short distances, and socialized with family. Tr. 278-81, 316-19, 351-55, 507, 645, 769-70. In response to Dr. Ciavarri's advice to exercise, Plaintiff and the doctor agreed that she should use her home treadmill at least three times a week. Tr. 661. Plaintiff also relayed that she unloaded boxes after she had moved; performed yard work and housework (albeit sometimes a family member helped with heavy lifting); and played games on her computer. Tr. 663, 669, 673, 729. Furthermore, despite her complaints of

disabling pain, Plaintiff stated she had no problems paying attention, could follow spoken and written instructions, had no difficulty getting along with others, and could finish what she started, although she needed some breaks when doing chores. Tr. 284, 320, 322. Based on the foregoing, the Court finds that the ALJ properly concluded there was neither clinical nor diagnostic support for the restrictions identified by Dr. Ciavarri.

Plaintiff's challenges to the ALJ's assessment of the psychiatric opinions of Dr. Brownfield and Dr. Lin are similarly unavailing. *See* ECF No. 10-1 at 19. The ALJ accorded Dr. Brownfeld's opinion "considerable probative value" and Dr. Lin's opinion "only some probative value." Tr. 27. Upon review of the ALJ's decision, the Court finds that the ALJ accounted for Plaintiff's ability to handle stress by limiting Plaintiff to unskilled jobs. Tr. 28. Furthermore, Plaintiff has failed to explain how the limitations the ALJ assessed do not account for Dr. Brownfeld's opinion that Plaintiff could appropriately deal with stress with mild limitations. Tr. 507. *See Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *3 (N.D.N.Y. 2014) (holding the ALJ adequately factored in limitations in maintaining concentration, persistence and pace and difficulties in dealing with stress by limiting the claimant to simple unskilled work). "[B]asic communication is all that is needed to do unskilled work. The ability to hear and understand simple oral instructions or to communicate simple information is sufficient." SSR 96-9p. In addition, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15.

Plaintiff's contention that Dr. Lin's mild limitations in maintaining attention and concentration and moderate limitations in performing complex tasks was inconsistent with the ALJ's RFC (*see* ECF No. 10-1 at 20) is likewise unpersuasive. *See Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. 2017) (finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations

and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled work) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Whipple v. Astrue*,, 479 F. App'x 367, 370 (2d Cir. 2012); *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x. 51, 53 (2d Cir. 2016)). The ALJ also reasonably found Dr. Lin's opinion that Plaintiff had moderate-to-marked difficulty tolerating stress unsupported by the record evidence. Tr. 27. As noted by the ALJ, Plaintiff's PHQ-9 test for depression showed that Plaintiff achieved a score of 2, indicating only minimal depression, and her GAD-7 score of 1 suggests no symptoms of anxiety. Tr. 27, 728.

In sum, the ALJ adequately accounted for stress in limiting Plaintiff to unskilled work and Plaintiff points to no evidence in the record supporting a finding for greater restrictions. Plaintiff cared for her disabled daughter, had a wide array of daily activities of living, and had mental status findings showing that she had coherent thoughts, full orientation, intact attention and concentration, intact memory, and good insight/judgment. Tr. 278-81, 316-19, 351-55, 507, 645, 663, 666, 769-70. Plaintiff was also cooperative and related adequately. Tr. 506, 644. Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude her performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 306 (Commissioner need not provide evidence of the claimant's RFC); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[Commissioner] is entitled to rely not only on what the record says but also on what it does not say."). Plaintiff here has not met her burden.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the

record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448) (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a de novo review).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including medical opinion evidence, treatment reports, and diagnostic testing, as well as Plaintiff's testimony, and those findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE